## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| IN RE: | ) | |
| | ) | |
| MEGHAN M. MOSCHELL, | ) | Bankruptcy No. 19-21819-JAD |
| | ) | |
| Debtor. | ) | Chapter 7 |
| ——————————————— | X | |
| | ) | |
| CULLEN W. COMPTON, | ) | |
| | ) | |
| Plaintiff, | ) | Adversary No. 19-02104-JAD |
| | ) | |
| -v- | ) | Related to ECF No. 8 |
| | ) | |
| MEGHAN M. MOSCHELL, | ) | |
| | ) | |
| Defendant. | ) | |
| ——————————————— | X | |

## MEMORANDUM OPINION

This adversary proceeding is a nondischargeability action filed by Cullen W. Compton ("Mr. Compton" or the "Plaintiff"), *pro se*, against the debtor, Meghan W. Moschell ("Ms. Moschell" or the "Debtor" or the "Defendant"). Civil actions concerning dischargeability of particular debts are core proceedings pursuant to 28 U.S.C. §§ 157(b)(2)(I) and (J), and this Court has the requisite subject-matter jurisdiction to hear and decide this matter pursuant to both 28 U.S.C. § 1334(b) and the standing order of reference issued by the United States District Court for the Western District of Pennsylvania. See *Order of Reference of Bankruptcy Cases and Proceedings Nunc Pro Tunc* dated October 16, 1984.

By this action, Mr. Compton seeks a determination that his claim against Ms. Moschell, which sounds in nature of the tort conversion, is nondischargeable.

Ms. Moschell has moved to dismiss (the "Motion to Dismiss") the Plaintiff's complaint (the "Complaint") pursuant to Fed.R.Civ.P. 8, 9 and 12(b)(6), as such rules are incorporated into bankruptcy adversary proceedings by operation of Fed.R.Bankr.P. 7008, 7009, and 7012.

Specifically, Ms. Moschell contends that this adversary proceeding should be dismissed because Mr. Compton's claim for conversion does not fall within the ambit of nondischargeable claims for "actual fraud" for purposes of 11 U.S.C. § 523(a)(2)(A). Ms. Moschell further contends that Mr. Compton's claim for conversion does not constitute a nondischargeable claim for fiduciary "defalcation," "larceny," or "embezzlement" for purposes of 11 U.S.C. § 523(a)(4). Moreover, after inquiry by the Court during oral argument, Ms. Moschell argues that Mr. Compton's claim for conversion does not constitute a nondischargeable claim for "willful and malicious injury to property" for purposes of 11 U.S.C. § 523(a)(6).

Even if Mr. Compton's claim could conceivably fall within the scope of non-dischargeable claims under 11 U.S.C. § 523, Ms. Moschell seeks dismissal of the adversary proceeding contending that Mr. Compton's Complaint lacks sufficient specificity to put Ms. Moschell on notice of the basis by which the claim could be determined nondischargeable.

For the reasons set forth below, the Court concludes that Mr. Compton's pleading is specific enough, and states a claim for relief pursuant to not only 11 U.S.C. §§ 523(a)(2) and 523(a)(4), but also pursuant to 11 U.S.C. § 523(a)(6).  As such, an order shall be entered which denies the Motion to Dismiss.

## I.
## Procedural Posture & Summary of Allegations

The background of this adversary proceeding concerns Ms. Moschell's unauthorized cashing of a check and retention of funds belonging to the Plaintiff. The procedural posture and allegations asserted by the Plaintiff in his Complaint can be summarized as follows:

1.  The Plaintiff and the Debtor purchased realty located at 1604 Carmela Drive, Pittsburgh, PA 15227 (the "Property") in January 2009. See Complaint, ECF No. 1, at ¶ 1.

2.  The Plaintiff and the Debtor were jointly listed on both the deed to the Property and the mortgage encumbering the same. See January 2, 2019 Opinion and Order of Court entered in the Allegheny County Court of Common Pleas (the "Judge O'Brien Opinion"), Ex. 7 to the Complaint, page 4.

3.  Shortly after purchasing the Property, the Debtor vacated it. See Complaint at ¶ 3. See also Judge O'Brien Opinion at page 4.

4.  Several years later, on August 16, 2012, the Debtor executed a quit claim deed transferring ownership of the Property to the Plaintiff.[1] The Debtor received compensation relative to the

---

[1]    There is discrepancy regarding the date of transfer of the Property from the parties jointly to the Plaintiff in his individual capacity. For example, the Plaintiff states that the date of the *Quit Claim Deed* was August 22, 2012 (Complaint at ¶ 4), whereas the Judge O'Brien Opinion identifies the date as August 25, 2012 (Judge O'Brien Opinion at pg. 4). However, the date of the *Quit Claim Deed* attached to the Complaint
(continued...)

execution of the quit claim deed. <u>See</u> Complaint at ¶¶ 4-5. <u>See</u> <u>also</u> *Quit Claim Deed*, Ex. 1 to Complaint, <u>and</u> Judge O'Brien Opinion at page 4.

5. The Plaintiff then listed the Property for sale in the spring of 2015 and the property sold on July 18, 2016. <u>See</u> Complaint at ¶ 7 & 9, and Judge O'Brien Opinion at page 4.

6. Without the Plaintiff's consent, and prior to the sale (i.e., sometime between May and July 2016), the Debtor changed the mailing address on file with the mortgage company (SunTrust Mortgage) from the Plaintiff's address to her address at 312 Cape May Avenue, Pittsburgh, PA 15216. <u>See</u> Complaint at ¶ 8.

7. Shortly after the sale of the Property, SunTrust Mortgage then sent an escrow check in the amount of $1,991.09 to the Cape May Avenue address, which the Debtor cashed without the Plaintiff's consent or knowledge. <u>See</u> Complaint at ¶ 11-12, and Judge O'Brien Opinion at pages 4-5.

8. The escrow check was made payable to both the Plaintiff and the Debtor. <u>See</u> Judge O'Brien Opinion at pp. 4-5, and Letter from SunTrust Mortgage, Ex. 3 to the Complaint, page 3.

9. After receiving notice of the Debtor's actions, the Plaintiff commenced suit against the Debtor. <u>See</u> Complaint at ¶ 13.

10. At the local magisterial district court, judgment was awarded in favor of the Plaintiff and against the Debtor in the amount of $2,321.59. <u>See</u> *Notice of Judgment/Transcript Civil Case*, Ex. 4 to the Complaint, page 2.  The Debtor appealed that judgment to the Court of Common Pleas of Allegheny County which assigned the matter to its Board of Arbitrators.

11. On appeal, the Board of Arbitrators found in favor of the Plaintiff and awarded him $1,991.09 against Ms. Moschell. <u>See</u>

---

(...continued)

is August 16, 2012, with a recording date of August 22, 2012. <u>See</u> *Quit Claim Deed*, Ex. 1 to Complaint. The Court will use the August 16, 2012 date.

Ruling from Board of Arbitrators, Ex. 5 to the Complaint, page 3.

12.     The Debtor also appealed that ruling and on September 18, 2018, Judge O'Brien of the Court of Common Pleas of Allegheny County, Pennsylvania entered a non-jury verdict in favor of the Plaintiff and against the Debtor in the amount of $1,991.09. See *Non-Jury Verdict,* Ex. 6 to the Complaint, page 3.

13.     The Debtor filed a motion seeking post-trial relief from Judge O'Brien's award. See Judge O'Brien Opinion at page 3.

14.     On January 2, 2019, Judge O'Brien entered an *Opinion and Order of Court,* wherein he found that the Plaintiff credibly testified that, *inter alia,* only the Plaintiff made mortgage payments while the Property was jointly owned by the parties and after the Plaintiff became the sole owner. See Judge O'Brien Opinion at page 4.  And thus, Judge O'Brien concluded that the Plaintiff was the "sole source of the funds" subject of the escrow check. See id. Also, Judge O'Brien concluded that the Debtor impermissibly cashed the escrow check and retained the funds to the detriment of the Plaintiff. See id. at page 5.

15.     Judge O'Brien further found that the Plaintiff's claim sounded in "conversion"[2] and "[t]he fact that the check representing the escrowed funds was made out to both [the Plaintiff and the Debtor] did not establish any right to the check in [the Debtor]. Quite simply, it was [the Plaintiff's] money and [the Debtor] took it without his consent and without lawful justification." See Judge O'Brien Opinion at page 5.

16.     Judge O'Brien entered an order denying the post-trial relief and entered judgment against the Debtor and in favor of the

---

[2]     Judge O'Brien defined "conversion" as "the deprivation of another's right of property in, or use of possession of, chattel, or other interference therewith, without the owner's consent and without lawful justification." See Judge O'Brien Opinion at page 5 (quoting PTSI, Inc. v. Haley, 71 A.3d 304, 314 (Pa. Super. 2013)(citations omitted)).

Plaintiff in the amount of $1,991.01, plus interest "at the legal rate" from September 18, 2018, and record costs.

17.  On May 2, 2019, the Debtor filed a voluntary petition under chapter 7 of the Bankruptcy Code (11 U.S.C. § 101 *et seq.*). See *Voluntary Petition for Individuals Filing for Bankruptcy*, 19-21819-JAD, ECF No. 1.

18.  On June 3, 2019, the Plaintiff commenced this Adversary Proceeding.

19.  In the Adversary Proceeding Cover Sheet filed with this Court, (ECF No. 1, page 1), the Plaintiff identified himself as a creditor of the Debtor and described as his cause of action the following: "Ms. Moschell acted in conversion, fraud, and theft when she stole an escrow closing check in 2016. 523(a)(2)(4)." The Plaintiff additionally selected as the "Nature of Suit" the following: "§523(a)(2), false pretenses, false representation, actual fraud[;]" "§523(a)(4), fraud as fiduciary, embezzlement, larceny;" and "[r]ecovery of money/property – other[.]"[3] The Plaintiff also made a demand of $2,321.59 plus costs. See ECF No. 1, page1.

20.  In addition to what is set forth in the Adversary Proceeding Cover Sheet, the caption of the adversary Complaint solely identifies "11 U.S.C. § 523(a)(2)(4)" as the basis for the suit.

21.  In the body of the adversary Complaint, the Plaintiff summarized his allegations as follows: "Ms. Moschell changed the mailing address of a mortgage account and cashed an escrow closing check of which she had no lawful rights." The adversary Complaint also alleges that "Ms. Moschell acted in conversion and with intent to defraud." The adversary Complaint therefore requested that the debt due Mr. Compton be found nondischargeable "due to [Ms. Moschell's] act of conversion, fraud, and theft." Complaint, ECF No. 1 at page 4.

---

[3]     With respect to the selection of "[r]ecovery of money/property – other[,]" this selection should be contrasted with the other options of "[r]ecovery of money/property" for "§542 turnover of property[,]" "§547 preference[,]" and "§548 fraudulent transfer[.]" See Adversary Proceeding Cover Sheet, ECF No. 1, page 1.

## II.
## Legal Standard for Stating a Claim

Fed. R. Civ. P. 12(b)(6), made applicable to adversary proceedings by Fed. R. Bankr. P. 7012(b), provides that complaints may be dismissed for "failure to state a claim on which relief can be granted."

In deciding such a motion, the Court "may consider material which is properly submitted as part of the complaint . . . without converting the motion to dismiss into a motion for summary judgment." Lee v. City of Los Angeles, 250 F.3d 668, 688 (9th Cir. 2001).

The Court may also consider: documents the complaint incorporates by reference or are otherwise integral to the claim (see Rosenfield v. HSBC Bank, USA, 681 F.3d 1172, 1178 (10th Cir. 2012), Brownmark Films, LLC v. Comedy Partners, 682 F.3d 687, 690 (7th Cir. 2012), Building Indus. Elec. Contractors Ass'n v. City of New York, 678 F.3d 184, 187 (2d Cir. 2012) ), information subject to judicial notice (see Schatz v. Republican State Leadership Comm., 669 F.3d 50, 55–56 (1st Cir. 2012), Skilstaf, Inc. v. CVS Caremark Corp., 669 F.3d 1005, 1016 n. 9 (9th Cir. 2012), Gee v. Pacheco, 627 F.3d 1178, 1186 (10th Cir. 2010) ), and matters of public record such as orders and other materials in the record of the case (see Miller v. Redwood Toxicology Lab., Inc., 688 F.3d 928, 931 n. 3 (8th Cir. 2012) ).

In order "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim for relief that is

-7-

plausible on its face.' " Ashcroft v. Iqbal, 556 U.S. 662, 678, 129 S.Ct. 1937, 173

L.Ed.2d 868 (2009)(quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570, 127

S.Ct. 1955, 167 L.Ed.2d 929 (2007)).

   "A claim has facial plausibility when the plaintiff pleads factual content that

allows the court to draw the reasonable inference that the defendant is liable for

the misconduct alleged." Id. (quoting Twombly, 550 U.S. at 556, 127 S.Ct. 1955).

   Determining whether a claim for relief is plausible is a "context-specific

task" requiring the court to "draw on its judicial experience and common sense."

Ashcroft v. Iqbal, 556 U.S. at 679, 129 S.Ct. 1937 (citing Iqbal v. Hasty, 490 F.3d

143, 157–58 (2d Cir. 2007)). "A pleading that offers 'labels and conclusions' or 'a

formulaic recitation to the elements of a cause of action will not do.' " Id. at 678,

129 S.Ct. 1937.

   Additionally, the court need not accept as true bald assertions (or bald

conclusions or inferences), legal conclusions couched or masquerading as facts,

or conclusions contradicted by the complaint's own exhibits or other documents

of which the court may take proper notice. See Lazy Y Ranch Ltd. v. Behrens, 546

F.3d 580, 588 (9th Cir. 2008); Bishop v. Lucent Tech., Inc., 520 F.3d 516, 519

(6th Cir. 2008); Aulson v. Blanchard, 83 F.3d 1, 3 (1st Cir. 1996) (the court is not

obligated to "swallow the plaintiff's invective hook, line, and sinker; bald

assertions, unsupportable conclusions, periphrastic circumlocutions, and the like

need not be credited"); see also Park Restoration, LLC v. Trustees of Conneaut

Lake Park (In re Trustees of Conneaut Lake Park, Inc.), 592 B.R. 64, 69–70

(Bankr. W.D. Pa. 2018).

### III.
### The Plaintiff's Adversary Complaint States a Claim

By his adversary Complaint, Mr. Compton seeks relief in the form of a

finding that the debt owed to him by the Debtor is nondischargeable. Reading the

Adversary Proceeding Cover Sheet, adversary Complaint, and related exhibits, the

Plaintiff asserts his nondischargeability claim pursuant to the "actual fraud"

provisions 11 U.S.C. §  523(a)(2)(A), as well as the "larceny" and "embezzlement"

provisions of 11 U.S.C. § 523 (a)(4).

Under Fed.R.Civ.P. 8(a)(2), as incorporated in these proceedings pursuant

to Fed.R.Bankr.P. 7008, a claim for relief must include "a short and plain

statement of the claim showing that the pleader is entitled to relief." Fed.R.Civ.P.

8(f) further provides that "[a]ll pleadings shall be so construed as to do substantial

justice."

Consistent with these rules, the U.S. Supreme Court has held that "a *pro

se* complaint, however inartfully pleaded, must be held to less stringent standards

than formal pleadings drafted by lawyers." Estelle v. Gamble, 429 U.S. 97, 106

(1976); see also Erickson v. Pardus, 551 U.S. 89, 94 (2007).

With this standard in mind, the Court is not required to assume the role of

advocate on behalf of a *pro se* party. Merryfield v. Jordan, 584 F.3d 923, 924 n.

1 (10th Cir. 2009).  However, courts applying the liberal pleading requirement have

concluded that courts interpret a *pro se* pleading as raising the "strongest argument that [it] suggest[s]." <u>Caro v. Weintraub</u>, 618 F.3d 94, 97 (2d Cir. 2010)(citing <u>Treistman v. Fed. Bureau of Prisons</u>, 470 F.3d 471, 474 (2d. Cir. 2006) and <u>Harris v. Mills</u>, 572 F.3d 66, 72 (2d Cir. 2009)). As one court observed, "[i]mplicit in the right of self-representation is an obligation on the part of the court to make reasonable allowances to protect *pro se* litigants from inadvertent forfeiture of important rights because of their lack of legal training." <u>Traguth v. Zuck</u>, 710 F.2d 90, 95 (2d Cir. 1983).

Consistent with the liberal pleading requirements afforded to *pro se* litigants, this Court inquired at the hearing on the Motion to Dismiss whether the Plaintiff's Complaint should be cabined solely within the contours of 11 U.S.C. §§ 523(a)(2) and 523(a)(4) without regard to the other provisions of section 523 of the Bankruptcy Code. Specifically, the Court inquired whether the Plaintiff's Complaint states a claim under 11 U.S.C. § 523(a)(6), which excepts from discharge those debts "for willful and malicious injury . . . to the property of another entity." Accordingly, the parties have submitted post-hearing briefs regarding whether Mr. Compton's adversary Complaint states a claim for relief pursuant to 11 U.S.C. §§ 523(a)(2)(A), 523(a)(4), and 523(a)(6). The legal sufficiency of these claims is addressed *ad seriatim* below.

### A.
### The Complaint States a Claim Pursuant to 11 U.S.C. § 523(a)(2)(A)

The Complaint filed by Mr. Compton seeks relief "due to Ms. Moschell's act

of conversion, fraud and theft." <u>See</u> Complaint, p. 4.  Section 523(a)(2)(A) of the

Bankruptcy Code excepts from discharge "any debt . . . for money . . . to the

extent obtained by . . . false pretenses, a false representation, or actual fraud . .

." <u>See</u> 11 U.S.C. § 523(a)(2)(A).  A question exists in this adversary proceeding as

to whether a claim for conversion is subject to nondischargeability under the

"actual fraud" provision of this section of the Bankruptcy Code.  In the Debtor's

Motion to Dismiss, the Debtor argues that the Complaint should be dismissed

because debts for conversion are not specifically enumerated as a type of debt

excepted from discharge pursuant to 11 U.S.C. § 523(a)(2)(A).  The Court,

however, does not find the Debtor's argument to be persuasive in light of

precedent of this Court, as well as decisions of other courts including the United

States Supreme Court.

Over a decade ago, this Court was confronted with the question of whether

debts sounding in unjust enrichment arising out of a debtor's collusion and active

participation in a fraudulent conveyance scheme can constitute "actual fraud" for

purposes of 11 U.S.C. § 523(a)(2)(A). <u>See</u> <u>Elliot et al. v. Kiesewetter (In re</u>

<u>Kiesewetter)</u>, 391 B.R. 740 (Bankr. W.D. Pa. 2008).  While claims for unjust

enrichment and collusion in a fraudulent conveyance scheme are not enumerated

in section 523(a)(2)(A), this Court held that such claims were excepted from

discharge because the claims at issue in <u>Kiesewetter</u> fell within the rubric of

"actual fraud" under the statute.  In support for this conclusion, this Court

-11-

followed the Seventh Circuit Court of Appeals decision in <u>McClellan v. Cantrell</u>, 217 F.3d 890, 892-893 (7th Cir. 2000). <u>See</u> <u>In re Kiesewetter</u>, 391 B.R. at 746-748.

To state the Court's conclusion in <u>Kiesewetter</u> succinctly, the phrase "actual fraud" in section 523(a)(2)(A) encompasses debts that arise from "any deceit, artifice, trick, or design involving direct and active operation of the mind used to circumvent and cheat another." <u>Id</u>. (citing <u>McClellan v. Cantrell</u>, 217 F.3d at 893 (citing 4 <u>Collier on Bankruptcy</u> ¶ 523.08[1][e] (15th ed., Lawrence P. King, ed. 2000)).  As Circuit Judge Posner wrote in <u>McClellan</u>:

> Fraud is a generic term, which embraces all the multifarious means which human ingenuity can devise and which are resorted to by one individual to gain an advantage over another by false suggestions or by the suppression of truth.  No definite and invariable rule can be laid down as a general proposition defining fraud, and it includes all surprise, trick, cunning, dissembling and any unfair way by which another is cheated.

<u>Id</u>. (citing <u>Stapleton v. Holt</u>, 207 Okla. 443, 250 P.2d 451, 453-54 (1952)).

More recently, the United States Supreme Court agreed with this interpretation of 11 U.S.C. § 523(a)(2)(A) and confirmed that "actual fraud" under the statute is difficult to "define more precisely" but includes liability for wrongful conduct beyond misrepresentations and false pretenses. <u>See</u> <u>Husky International Electronics, Inc. v. Ritz</u>, 136 S.Ct. 1581, 1586, 194 L.Ed.2d 655 (2016).  According to the Supreme Court, "fraud" connotes "deception or trickery" generally.  Thus, if the tort involves deception or trickery, and is done with wrongful intent or moral turpitude, the claim falls within the coverage of "actual fraud" for purposes of 11

U.S.C. § 523(a)(2)(A). <u>Id.</u> (citing <u>Neal v. Clark</u>, 95 U.S. 704, 709, 24 L.Ed. 586 (1878) and 1 J. Story, <u>Commentaries on Equity Jurisprudence</u> § 189, p. 221 (6th ed. 1853)); <u>see also</u> <u>Sauer Inc., d/b/a Sauer Southeast v. Lawson (In re Lawson)</u>, 791 F.3d 214, 219 (1st Cir. 2015).

Application of these elements to the adversary Complaint filed by Mr. Compton against Ms. Moschell leads the Court to conclude that the Plaintiff does state a claim under the "actual fraud" provisions of 11 U.S.C. § 523(a)(2)(A). At its core, Mr. Compton complains that the Debtor wrongfully intended to deprive Mr. Compton of his property interest in the escrow check, that the Debtor utilized deception and trickery when she caused the mailing address to be changed thus causing the mortgage company to mail the check to her instead of Mr. Compton, and that Debtor wrongfully cashed the check and retained the proceeds for her own benefit to the detriment of Mr. Compton. Given this basis of the Complaint, the Court is persuaded that this case can proceed pursuant to the definition of "actual fraud" as set forth in <u>Husky</u>, <u>McClellan</u>, and <u>Kieseswetter</u>.

**B.**
**<u>The Complaint States a Claim Pursuant to 11 U.S.C. § 523(a)(4)</u>**

Section 523(a)(4) of the Bankruptcy Code excepts from discharge any debt that is "for fraud or defalcation while acting in a fiduciary capacity, embezzlement or larceny." 11 U.S.C. § 523(a)(4). The Debtor's Motion to Dismiss contends that dismissal of this adversary proceeding is warranted because there are no allegations set forth in the Complaint indicating that Ms. Moschell was a fiduciary

of Mr. Compton. While it is correct that the pleadings fail to contain any fiduciary allegations, dismissal is not appropriate at this stage of the case because the "embezzlement" and "larceny" components of section 523(a)(4) do not require that the Debtor be a fiduciary. Accordingly, the Debtor's Motion to Dismiss is without merit.

When interpreting a statute, punctuation can be important. For example, the United States Circuit Court for the District of Columbia once wrote: "stuffing punctuation to the bottom of the interpretive toolbox" is a mistake. NACS v. Board of Governors of the Federal Reserve System, 746 F.3d 474, 486 (D.C. Cir. 2014). The United States Supreme Court even acknowledged a long time ago that "men's lives may depend upon a comma." United States v. Palmer, 16 U.S. (Wheat)610, 611 (1818)(Johnson, J., dissenting).

When interpreting the Bankruptcy Code, commas matter. For example, in United States v. Ron Pair Enterprises, Inc., 489 U.S. 235 (1989), the United States Supreme Court relied almost entirely on the placement of a comma to resolve a highly contested issue of statutory construction. See Gregory Germain, Discharging Income Tax Liabilities in Bankruptcy: A Challenge to the New Theory of Strict Construction for Scrivenor's Errors, 75 UMKC L. Rev. 741, 768 (2007).

The statute at the center of the dispute in Ron Pair was not section 523(a)(4). Rather, it was section 506(b) of the Bankruptcy Code. This distinction, however, is not relevant to the case at bar because the point made by Ron Pair is

that the placement of a comma can render the meaning of a statute more evident.

When the statute is clear, the United States Supreme Court has advised that the "plain meaning of legislation should be conclusive, except in the 'rare cases [in which] the literal application of a statute will produce a result demonstrably at odds with the intentions of its drafters.'" Ron Pair, 489 U.S. at 242 (alteration in original)(quoting Griffin v. Oceanic Contractors, Inc., 458 U.S. 564, 571 1982)).  The United States Supreme Court has also instructed:

> In interpreting a statute a court should always turn first to one, cardinal canon before all others.  We have stated time and time again that courts must presume that a legislature says in a statute what it means and means in a statute what it says there.  When the words of a statute are unambiguous, then, this first canon is also the last: judicial inquiry is complete.

Connecticut Nat. Bank v. Germain, 503 U.S. 249, 253-54 (1992)(internal citations and quotation marks omitted).

*Sub judice*, the statute plainly states that debts "for fraud or defalcation while acting in a fiduciary capacity, embezzlement or larceny" are non-dischargeable. 11 U.S.C. § 523(a)(4).  There is a comma in this phrase, reflecting that there are separate instances where certain debts are nondischargeable.  The first two instances, dealing with "fraud or defalcation," contain the qualifier "while acting in a fiduciary capacity."  The latter two instances (i.e., "embezzlement or larceny") do not contain the same "fiduciary" qualifier.  Accordingly, the plain language of the statute provides that general claims for embezzlement or larceny

are excepted from discharge in bankruptcy without regard to whether or not the

debtor was (or is) a fiduciary.

This Court's interpretation of section 523(a)(4) is consistent with other

courts that have interpreted the statute.  For example, in In re Musgrave the

Bankruptcy Appellate Panel for the Tenth Circuit examined the text of section

523(a)(4) and held that:

> The use of the disjunctive "or," and the lack of a comma
> after the word "fraud," indicates the qualifying phrase
> "while acting in a fiduciary capacity" applies to both
> fraud and defalcation. The presence of a comma after
> "while acting in a fiduciary capacity" indicates that the
> qualifying phrase does not apply to the different
> categories of misconduct following it. Pursuant to these
> grammatical rules, § 523(a)(4) excepts from discharge
> four different types of debts: (1) debts for fraud while
> acting in a fiduciary capacity ("fiduciary fraud"), (2) debts
> for defalcation while acting in a fiduciary capacity
> ("fiduciary defalcation"), (3) debts for embezzlement, and
> (4) debts for larceny.

Hernandez v. Musgrave (In re Musgrave), BAP Nos. CO-10-049, 08-25165, 2011

WL 312883, at *7 (B.A.P. 10th Cir., Feb. 2, 2011)(footnotes omitted)(citing 4 Collier

on Bankruptcy ¶ 523.10[1][d], 523–72 (Alan N. Resnick & Henry J. Sommer eds.,

16th ed. 2009) ("The phrase 'while acting in a fiduciary capacity' clearly qualifies

the words 'fraud or defalcation' and not embezzlement' or 'larceny.'")); accord

Sibbet v. Presutti (In re Presutti), 540 B.R. 154, 170 (Bankr. W.D. Pa.

2015)("fiduciary relationship is not required for claims alleging embezzlement or

larceny").

Not only does this interpretation make grammatical sense, the Court's own research has not located any persuasive authority by which it could conclude that this construction is demonstrably at odds with the intentions of Congress when the statute was passed by the legislature. Nor has the Debtor produced any rationale or reason to suggest that this interpretation is absurd. Thus, to state a claim under the "larceny" or "embezzlement" provisions of section 523(a)(4), Mr. Compton need not plead or show that Ms. Moschell was a fiduciary.

As to the elements of "larceny" and "embezzlement" under section 523(a)(4), there is some distinction between these two exceptions to a bankruptcy discharge. To a large degree the distinction turns on whether the funds at issue were in the lawful (or unlawful) possession of the debtor before he or she impermissibly converted them.

With respect to "larceny" and "embezzlement," this Court in <u>Kiesewetter</u> wrote:

> When determining larceny for nondischargeability purposes, the federal common law definition of larceny may be utilized. <u>Bryant v. Lynch (In re Lynch)</u>, 315 B.R. 173, 179 (Bankr. D. Colo. 2004); <u>see also</u> <u>DirecTV v. Deerey (In re Deerey)</u>, 371 B.R. 525 (Bankr. M.D. Fla. 2007); 4 <u>Collier on Bankruptcy</u> ¶523.10[2] (15th ed. rev., 2007). That definition provides that larceny is a "felonious taking of another's personal property with intent to convert it or deprive the owner of same." <u>Deerey</u>, <u>supra</u>.; <u>In re Schlessinger</u>, 208 Fed. Appx. 131, 133 (3d Cir. 2006). The term "felonious" has been defined as "proceeding from an evil heart or purpose; malicious; villainous . . . Wrongful; (of an act) done without excuse or color of right". <u>Black's Law Dictionary</u>

(8th ed. 2004).

Larceny requires that the initial appropriation of another's property be wrongful. It differs for nondischargeability purposes in this respect from embezzlement. Embezzlement is the "fraudulent appropriation of property by a person when such property has been entrusted, or into whose hands it has lawfully come." In re Ishmael, Adv. No. 07-287, 2008 WL 80040 (Bankr. E.D. Pa. Jan. 7, 2008).

In re Kiesewetter, 391 B.R. at 748.[4]

Applying these elements to the cause of action plead by Mr. Compton reveals that he states a claim for relief under 11 U.S.C. § 523(a)(4). As set forth above, Mr. Compton avers that the escrow funds were his property (and the Court of Common Pleas found as much). Mr. Compton complains that the Debtor wrongfully intended to deprive Mr. Compton of his property interest in the escrow check, that the Debtor utilized deception and trickery when she caused the mailing address to be changed thus causing the mortgage company to mail the check to the Debtor instead of Mr. Compton, and that Debtor wrongfully cashed the check and retained the proceeds for her own benefit to the detriment of Mr. Compton. A fair reading of the adversary Complaint also is that Mr. Compton alleges that the conduct of the Debtor was intentional and purposely designed to usurp Mr. Compton's interests.

---

[4]     "Larceny" has alternatively been defined as the "wrongful taking and carrying away of the property of another with the intent to convert such property to the taker's use without the consent of the owner." In re Kiesewetter, 391 B.R. at 748, n. 3 (quoting Kansas Bankrs. Sur. Co. v. Eggleston (In re Eggleston), 243 B.R. 365, 378 (Bankr. W.D. Mo. 2000)).

All of these allegations taken together fall within the rubric of civil "larceny" or "embezzlement," depending upon whether Ms. Moschell's taking of possession of the check was lawful or not. If lawful, then the claim is one for "embezzlement." If unlawful or wrongful, then it is a claim based upon civil "larceny." The Court need not decide this nuance today. Rather, all that the Court is called upon to do is decide whether Mr. Compton has stated a claim. The Court answers this question in the affirmative, and, as such, the Motion to Dismiss should be denied.

## C.
## The Complaint States a Claim Pursuant to 11 U.S.C. § 523(a)(6)

Section 523(a)(6) of the Bankruptcy Code excepts from discharge debts for "willful and malicious injury by the debtor to another entity or to the property of another entity[.]" 11 U.S.C. § 523(a)(6). The Debtor has argued that Mr. Compton's cause of action cannot be construed to state a claim under this section of the Bankruptcy Code. The Court, however, is not convinced by the Debtor's arguments.

It is true that "not every tort judgment for conversion is exempt from discharge [under 11 U.S.C. § 523(a)(6)]." Kawaauhau v. Geiger, 523 U.S. 57, 61, 118 S.Ct. 974, 140 L.Ed.2d 90 (1998). It is not enough under the statute that the creditor suffer injury to itself or property. Rather, the injury must have been caused by willful and malicious conduct of the debtor.[5]

---

[5]    Stated in other words, "the tort of conversion has been held to be a general intent offense,

(continued...)

An examination of these two components, i.e., willful and malicious conduct, reveals that under "Geiger, the willful injury requirement . . . is met when it is shown either that the debtor had the subjective motive to inflict the injury or that the debtor believed that injury was substantially certain to occur as a result of his conduct." Petralia v. Jercich (In re Jercich), 238 F.3d 1202, 1208 (9th Cir. 2001).  As stated by the Third Circuit Court of Appeals in a pre-Geiger opinion, an injury is willful under the Bankruptcy Code only if the actor purposefully inflicted the injury or acted with substantial certainty that injury would result.  Conte v. Gautam (In re Conte), 33 F.3d 303, 307 (3d Cir. 1994); see also Lavrich v. Scott (In re Scott), 294 B.R. 620 (Bankr. W.D. Pa. 2003).  As to malice, the act resulting in the injury must be "wrongful and without just cause or excuse, even in the absence of personal hatred, spite or ill-will." See Wymard v. Ali (In re Ali), 321 B.R. 685, 693 (Bankr. W.D. Pa. 2005) (citing 4 Collier on Bankruptcy ¶ 523.12[1] at 523–91); see also Enterprise Bank v. Hannan (In re Hannan), 477 B.R. 603, 612 (Bankr. W.D. Pa. 2012); Wann v. Sosso (In re Sosso), 516 B.R. 303, 314 (Bankr. W.D. Pa. 2014).

---

[5](...continued)
meaning that only the act, but not necessarily the injury, be intentional." Kimco Leasing Co. v. Wilson (In re Wilson), 383 B.R. 678, 681 (Bankr. N.D. Ohio 2007).  As a result, cases where the conversion merely rests upon the intentional act, rather than the willful and malicious injury, relief under 11 U.S.C. § 523(a)(6) will not lie. Id.  As one court observed: "A claim founded upon a mere technical conversion, without conscious intent to violate the rights of another, and under mistake or apprehension, is dischargeable. Wilmington Trust Co. v. Behr (In re Behr), 42 B.R. 922, 925 (Bankr. E.D. Pa.1984) (citing Davis v. Aetna Acceptance Corp., 293 U.S. 328, 55 S. Ct. 151, 79 L.Ed. 393 (1934) and 1A Collier on Bankruptcy, § 17.09 (14th ed.)).

At the motion to dismiss stage, the Court is not called upon to determine whether the Plaintiff has proved willfulness and malice on the part of the Debtor. Rather, the Court is merely called upon to determine whether the Plaintiff has stated a claim pursuant to 11 U.S.C. § 523(a)(6).

Reading Mr. Compton's Complaint as a whole, the Court holds that Mr. Compton obviously alleges that Ms. Moschell's actions were designed to deprive Mr. Compton of his interest in the escrow check. Mr. Compton also obviously alleges that the machinations of Ms. Moschell were without legal justification and purposefully directed to take away property allegedly belonging solely to Mr. Compton. For these reasons, Mr. Compton states a claim under 11 U.S.C. § 523(a)(6).[6]

## IV.
## Conclusion

In <u>Husky</u>, the United States Supreme Court observed that there can be inevitable overlap with respect to nondischargeable claims under 11 U.S.C. §§ 523(a)(2)(A), 523(a)(4), and 523(a)(6). <u>Husky</u>, 136 S.Ct. at 1588. The adversary proceeding that is the subject of this Memorandum Opinion is illustrative of this overlap.

Canvassing Mr. Compton's Complaint reveals that not only has he stated

---

[6] This conclusion is consistent with prior cases holding willful and malicious injury under section 523(a)(6) includes a willful and malicious conversion. <u>In re Behr</u>, 42 B.R. at 925; <u>Vagley v. Lavitsky (In re Lavitsky)</u>, 11 B.R. 570, 571 (Bankr. W.D. Pa. 1981)(citing 95 Cong. R.H. 11096 (September 28, 1978)); and <u>Lehigh Valley Hosp. v. Dietrich (In re Dietrich)</u>, 595 B.R. 59, 66 (Bankr. E.D. Pa. 2018).

a claim for relief under these statutes, but that he has also stated his claim with the requisite particularity required by Fed.R.Civ.P. 9(b).  The Court reaches this conclusion because the Plaintiff's pleading clearly articulates the "who, what, when, where, and how" of the alleged conduct of the Debtor.  See Baicker-McKee et al., Federal Civil Rules Handbook at 380 (Thomson Reuters 2015) (citing Camasta v. Jos. A. Bank Clothiers, Inc., 761 F.3d 732, 737 (7th Cir. 2014) and U.S. ex rel. Ahumada v. NISH, 756 F.3d 268, 280 (4th Cir. 2014)).  As such, Ms. Moschell is on precise notice of what she is alleged to have done.  Id. at 381 (citing Frederico v. Home Depot, 507 F.3d 188, 200 (3d Cir. 2007) and U.S. v. Ford Motor Co., 532 F.3d 496, 504 (6th Cir. 2008)).

It appears to the Court that the Debtor's Motion to Dismiss is without merit and must be denied.  This Court's conclusion that the Plaintiff states a claim is consistent with the purposes behind the Bankruptcy Code generally.   While exceptions to discharge are strictly construed against the creditor and in favor of the debtor, see e.g., Lamar, Archer & Coffrin v. Appling (In re Appling), 138 S.Ct. 1752, 1758 (2018) and Schweig v. Hunter (In re Hunter), 780 F.2d 1577, 1579 (11th Cir. 1986), a fundamental purpose of the Bankruptcy Code is to provide relief only to the "honest but unfortunate debtor." Local Loan Co. v. Hunt, 292 U.S. 234, 244 (1934); Brown v. Felsen, 442 U.S. 127, 129 (1979).[7]

---

[7]    The Court is not reaching a decision, either positively or negatively, that the Debtor is an "honest but unfortunate debtor."  Rather, by its decision today, the Court is merely concluding that the Plaintiff
(continued...)

Mr. Compton's adversary Complaint squarely puts at issue whether the

Debtor is an "honest but unfortunate debtor" that is entitled to have the debt due

the Plaintiff discharged in this bankruptcy case.   Accordingly, an order shall be

entered that denies the Motion to Dismiss, and schedules further proceedings so

that the underlying merits of this matter can be adjudicated.

Dated: October 25, 2019            _____
                                   The Honorable Jeffery A. Deller
                                   United States Bankruptcy Judge


Case Administrator to Serve:

Kathryn L. Harrison, Esq., attorney for Ms. Meghan Moschell
Cullen W. Compton, *Pro Se*

FILED
10/25/19 6:14 am
CLERK
U.S. BANKRUPTCY
COURT - WDPA

---

[7](...continued)
has stated a claim and that the adversary proceeding shall continue on the merits.  In later proceedings,
the parties will address whether the conversion claim, as set forth in the state court judgment and opinion
of Judge O'Brien, is to be accorded *res judicata* or collateral estoppel with respect to the elements of
nondischargeability. Grogan v. Garner, 498 U.S. 279, 284-285 n. 11 (1991)(issue preclusion, i.e.,
collateral estoppel, is applicable in proceedings concerning dischargeability of debts in bankruptcy).