FILED
10/9/20 12:08 pm
CLERK
U.S. BANKRUPTCY
COURT - WDPA

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| IN RE: | ) | Bankruptcy No. 19-21819-JAD |
| | ) | |
| **MEGHAN M. MOSCHELL,** | ) | Chapter 7 |
| | ) | |
| Debtor. | ) | |
| ————————————— | X | |
| | ) | |
| **CULLEN W. COMPTON,** | ) | Adversary No. 19-02104-JAD |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| **MEGHAN M. MOSCHELL,** | ) | |
| | ) | |
| Defendant. | ) | |
| ————————————— | X | |

## MEMORANDUM OPINION

This adversary proceeding is a nondischargeability action filed by Cullen W. Compton ("Mr. Compton" or "Plaintiff"), *pro se*, against the debtor, Meghan M. Moschell ("Ms. Moschell" or "Debtor"). Civil actions concerning the dischargeability of a particular debt are core proceedings pursuant to 28 U.S.C. §§157(b)(2)(I) and (J). Further, this Court has the requisite subject-matter jurisdiction to hear and decide this matter pursuant to both 28 U.S.C. §1334(b) and the standing order of reference issued by the United States District Court for the Western District of Pennsylvania. See *Order of Reference of Bankruptcy Cases and Proceedings Nunc Pro Tunc* dated October 16, 1984.

## **Mr. Compton's Claims**

Mr. Compton's complaint (ECF 1) seeks a determination that his claim against the Debtor is nondischargeable pursuant to 11 U.S.C. §§523(a)(2) and 523(a)(4).  His complaint does not assert relief pursuant to 11 U.S.C. §523(a)(6). Nevertheless, we will address the applicability of this Section for the following reasons. The Debtor based a portion of her Motion to Dismiss the Complaint (ECF 8) arguing that Section 523(a)(6) does not apply to the facts alleged in this case.  In ruling on the Debtor's Motion, this Court concluded that the complaint contained sufficient allegations to withstand the Debtor's Motion to Dismiss on all bases including a claim pursuant to Section 523(a)(6) (ECF 21); Compton v. Moschell (In re Moschell, 607 B.R. 487 (Bankr. W.D. Pa. 2019). Further, Debtor failed to object to evidence and argument at the evidentiary hearing on this matter regarding the applicability of Section 523(a)(6). In fact, Debtor presented argument addressing Mr. Compton's burden of proof concerning this claim.

Federal Rule of Bankruptcy Procedure 7015(b)(2) provides in relevant part, "When an issue not raised by the pleadings is tried by the parties' express or implied consent, it must be treated in all respects as if raised in the pleadings." Considering the Debtor's failure to object to the presentation of evidence relating to Section 523(a)(6) at the evidentiary hearing; the Debtor having herself addressed Section 523(a)(6) issues in her Motion to Dismiss and at the evidentiary hearing, the Court concludes that the Parties have expressly

2

consented to the claim having been tried.  Accordingly, pursuant to Federal Rule of Bankruptcy Procedure 7015(b)(2) all issues regarding the applicability of 11 U.S.C. §523(a)(6) will be treated as having been raised in the pleadings.

## **Procedural Posture and Facts of the Case**

The Carmella Drive Property

In or around 2009 Mr. Compton and Ms. Moschell purchased a home on Carmella Drive in Pittsburgh, Pennsylvania ("Carmella Property"). The home was owned by the parties as tenants in common. Together, they obtained a mortgage as co-obligors from SunTrust Bank. The mortgage payments were made solely by Mr. Compton. Ms. Moschell contributed approximately $10,000.00 to the household expenses during the time that she lived at the Carmella Property. Debtor left the home in May of 2010 and moved to her parents' home.

While the Debtor was living at her parents' home she received numerous telephone calls from SunTrust regarding late and missing mortgage payments. SunTrust also inquired as to Ms. Moschell's then current mailing address which she confirmed as her parents' address on Cape May Drive in Pittsburgh, Pennsylvania ("Cape May address"). Contact from SunTrust to Ms. Moschell began in approximately 2011-2012 and continued through 2016.

In August of 2012 Mr. Compton requested and received a deed from Ms. Moschell for her interest in the Carmella Property.  At that time, the property had a value of approximately $100,000.00.  Mr. Compton paid the Debtor nominal consideration of $100.00 for the transfer of her interest in the property.

At no time while he still had an ownership interest in the Carmella Property did Mr. Compton attempt to refinance the property in order to extinguish the Debtor's obligations under the mortgage held by SunTrust Bank.

In July of 2016 Mr. Compton sold the Carmella Property – Ms. Moschell was not involved in the sale. The obligations of both the Plaintiff and the Debtor under the SunTrust mortgage were satisfied upon the closing.

Herein lies Mr. Compton's dispute with the Debtor: upon the closing of the Carmella Property, SunTrust held $1,991.09 in escrow. In July of 2016 SunTrust sent a check refunding the escrow funds to the Cape May address made payable to "Cullen W. Compton Meghan M. Moschell."  The Debtor made inquiry of SunTrust and was informed that she could cash the check and that a check would also be sent to Mr. Compton.  Ms. Moschell also made efforts to contact Mr. Compton regarding the escrow check but received no return communication from him.

Having received assurance from SunTrust that she could cash the check and having received no communication from Mr. Compton, Ms. Moschell endorsed the check and cashed it. Mr. Compton took issue with Ms. Moschell's actions believing that the check represented escrow funds belonging exclusively to him and that the check was improperly presented without his endorsement or permission. Further, Mr. Compton believed that Ms. Moschell affirmatively changed her address with SunTrust in the spring of 2016 for the purpose of diverting the escrow check without his knowledge.

4

<u>Mr. Compton's Pursuit of Common Law Remedies</u>

On October 24, 2016 Mr. Compton filed a complaint in a Magistrate District Court seeking damages for the amount of the SunTrust check which had been cashed by Ms. Moschell. A judgment was entered against Ms. Moschell. She appealed to the Allegheny Court of Common Pleas where a panel of Arbitrators affirmed the judgment against her. The Debtor again appealed. Judge O'Brien of that Court entered a non-jury verdict in favor of Mr. Compton in the amount of $1,991.00. Following the filing of a Motion for Post-Trial Relief by Ms. Moschell the Trial Court issued an opinion and order denying the Motion for Post-Trial Relief. (ECF 46, Exhibit 7.)

Judge O'Brien concluded that Ms. Moschell impermissibly cashed the escrow check and retained the escrow funds to the detriment of the Plaintiff. He further found that Mr. Compton's claim sounded in conversion which he defined as "the deprivation of another's right of property in, or use of possession of, chattel, or other interference therewith, without the owner's consent and without lawful justification." (Opinion at 5) *citing* <u>PTSI, Inc. v. Haley</u>, 71 A.3d 304, 314 (Pa. Super. 2013). Judgment was entered in favor of Mr. Compton by order dated January 2, 2019. (ECF 46, Exhibit 7.)

<u>The Bankruptcy Proceedings</u>

On May 2, 2019, the Debtor filed a voluntary petition under chapter 7 of the Bankruptcy Code (11 U.S.C. § 101 *et seq.). See Voluntary Petition for*

*Individuals Filing for Bankruptcy*, 19-21819-JAD (ECF 1). On June 3, 2019, the Plaintiff commenced this Adversary Proceeding, *pro se*. His Complaint seeks relief "due to Ms. Moschell's act of conversion, fraud and theft." <u>See</u> Complaint, p.4.

The Debtor filed a Motion to Dismiss the Complaint (ECF 8 ) arguing that the complaint did not state a claim under any of the exceptions to discharge sought by the Plaintiff under 11 U.S.C. §523. After briefing and oral argument this Court entered a Memorandum Opinion and Order denying the Motion to Dismiss concluding that the complaint did, in fact, state claims under each of the theories presented. (ECF No. 21.) <u>Compton</u>.

An evidentiary hearing was held via ZOOM on August 6, 2020 at which both parties presented testimony and evidence. Following the hearing it appeared to the Court that Ms. Moschell had not been sworn in prior to her testimony. No objection was made. On August 7, 2020 this Court issued an order directing the Debtor to "affirm and ratify her testimony by filing an affidavit or declaration, under penalty of perjury, certifying that her testimony was the truth, the whole truth, and nothing but the truth." (ECF 48.) Debtor complied with the Court's order and filed an affidavit on August 14, 2020. (ECF 50.) Without objection having been made, any objections are waived. <u>See</u> <u>Wilcoxan v. United States</u>, 231 F.2d 384, 386 (10th Cir.), <u>cert. denied</u>, 351 U.S. 943 (1956); <u>United States v. Odom</u>, 736 F.2d 104, 114-116 (4th Cir. 1984); <u>cf</u>. <u>Dennison v. United States</u>, 385 F.2d 905, 907 (5th Cir. 1967).

6

This matter is now ready for a determination of whether the Plaintiff has met his burden of proof on his claims. After review of the pleadings and briefs, and hearing testimony this Court finds that Mr. Compton's burden has not been met and concludes that his claim is dischargeable insofar as none of  the exceptions to discharge set forth in 11 U.S.C. §523 upon which he relies  have been proven. To the extent there are contradictions in the testimony of the Plaintiff and the Debtor the Court finds the Debtor's testimony to be credible. This Memorandum Opinion and Order constitute this Court's findings of fact and conclusions of law.

## Effect of the Judgment in the Court of Common Pleas

In ruling on the Debtor's Motion to Dismiss, this Court anticipated that the parties would address the question of whether Judge O'Brien's opinion and ultimate judgment that Mr. Compton had proven a common law conversion claim against Ms. Moschell had collateral estoppel effect in this matter. Compton, 607 B.R at 501 n. 7; (ECF  21, page 23.) This Court concludes that collateral estoppel does not apply in this instance.

Collateral estoppel is applicable in proceedings to determine the dischargeability of debts in bankruptcy. Grogan v. Garner, 498 U.S. 279, 284-285 n.11 (1991).   The application of the collateral estoppel doctrine in a federal case is based on the federal full faith and credit statute – 28 USC §1738. In re: Mickletz, 544 B.R. 804, 813 (Bankr. E.D. Pa 2016). That statute provides, in relevant part, that state judicial proceedings, "shall have the same full faith and

credit in every court within the United States . . . as they have by law or usage in the courts of such State from which they are taken." *see* Id. at 814.

"[A] federal court must apply state law and evaluate whether relitigation would be precluded in the courts of the state in which the initial litigation took place." Id. *citing* Swineford v. Snyder County PA, 15 F.3d 1258, 1266 (3d Cir. 1994); In re: Birenbaum, 2006 WL 1997478 *4 (Bankr. W.D. Pa 2006).

Because a debt based on conversion is not specifically dischargeable pursuant to Title 11 (In re Parker, 388 B.R. 11, 21 (Bankr. N.D. N.Y. 2006)), the Plaintiff must prove his claim falls within one of the exceptions to discharge under 11 U.S.C. §523. The collateral estoppel analysis in this case, then, begins with a review the elements of Mr. Compton's Section 523 claims to be compared with the findings made and conclusion reached by the Court of Common Pleas of Allegheny County in Mr. Compton's common law claim against the Debtor. Judge O'Brien did not issue detailed findings of fact or legal conclusions. However, the following can be gleaned from his opinion.

> The Court found Mr. Compton's testimony to be credible. Ms. Moschell was represented at the non-jury trial but did not appear to present testimony.

> Mr. Compton was the sole source of the escrow funds at issue.

> "The fact that the check representing the escrowed funds was made out to both plaintiff and defendant did not establish any right to the check in defendant." (ECF 46, page 5.)

8

 "[I]t was his money and she took it without his consent and without lawful justification." Id.

Based on the foregoing, Judge O'Brien concluded that Mr. Compton proved a claim for conversion.

Mr. Compton's Section 523 claims arise from Sections 523 (a)(2)(A), (a)(4), and (a)(6).   His Section 523(a)(2)(A) claim is based on the "actual fraud" provisions of the statute. His Section 523(a)(4) claim is based on allegations of embezzlement and larceny.   Finally, his Section 523(a)(6) claim is based on allegations that the Debtor's conversion of the escrow fund check was "willful and malicious."

To prove his claim for "actual fraud" Mr. Compton was required to prove: (1) that Ms. Moschell obtained the escrow check through a material misrepresentation; (2) that, at the time, Ms. Moschell knew the misrepresentation was false or made with gross recklessness as to its truth; (3) that Ms. Moschell intended to deceive Mr. Compton; (4) that Mr. Compton justifiably relied on a false representation; and (5) that Mr. Compton sustained a loss and damages as a proximate result of materially false representations. In re Sevastakis, 591 B.R. 197, 202 (Bankr. D. N.J. 2018); In re Gallagher, 2016 WL 4989942, at *2-3 (Bankr. D.N.J. Sept. 9, 2016).

Judge O'Brien made no findings regarding essential elements of a §523(a)(2)(A) claim. No findings were made that any misrepresentations were made by Ms. Moschell to Mr. Compton. No findings were made as to Ms.

9

Moschell's state of mind regarding alleged misrepresentations required to establish element numbers 2 and 3 of a Section 523(a)(2)(A) claim. The lack of findings on these elements is explained by the fact that the Debtor did not testify in that non-jury trial. Finally, without a finding that Ms. Moschell made a material misrepresentation, a finding with regard to the fifth element of a §523(a)(2)(A) claim is irrelevant.  In short, Judge O'Brien's decision does not contain facts or conclusions necessary to prove Mr. Compton's §523(a)(2(A)) claim.

Mr. Compton's §523(a)(4) is based on his argument  that a claim for conversion is identical to embezzlement and/or larceny. Though Mr. Compton's conclusion in this regard is erroneous, a review of Judge O'Brien's opinion is appropriate to determine whether any of his findings and conclusions mirror the elements of the Plaintiff's Section 523(a)(4).

"Embezzlement" pursuant to §523(a)(4) requires proof of: "(1) entrustment, (2) of property (3) of another (4) that is misappropriated (used or consumed for a purpose other than for which it was entrusted), (5) with fraudulent intent." In re Bringhurst, 569 B.R. 814, 822 (Bankr. D. Utah 2017) *citing* Chenaille v. Palilla (In re Pailla), 493 B.R. 248, 252 (Bankr. D. Colo. 2013).

Judge O'Brien made no findings relevant to essential elements of a claim for embezzlement. There was no finding of "entrustment" of Mr. Compton's property to Ms. Moschell. Again, there are no findings regarding Ms. Moschell's fraudulent intent.  The opinion does find that the Debtor took the escrow funds

without Mr. Compton's consent and without "lawful justification." <u>Id</u>. This finding does not, however, rise to the level of intent necessary to show embezzlement. The intent element is particularly important given that in Section 523(a)(2)(A) claims the intent of the debtor is measured by a subjective standard. <u>Field v. Mans</u>, 516 U.S. 59, 70-72, 116 S.Ct. 437, 444, 133 L.Ed. 2d 351 (1955). Without more, Judge O'Brien's opinion does not allow this Court to determine that Ms. Moschell's intent rose to the requisite level required on the record before Judge O'Brien to accord his decision collateral estoppel effect.

Larceny is a "felonious taking of another's personal property with intent to convert it or deprive the owner of same. <u>Compton</u>, 607 B.R. at 498 . Mr. Compton asserts that the escrow funds were his and that Ms. Moschell wrongfully intended to deprive him of those funds. Judge O'Brien found in favor of Mr. Compton on these issues.  The question for this Court, however, is whether Ms. Moschell's intent rose to the level required here: "felonious."  Judge O'Brien did not reach this question. Without a showing of the necessary level of intent, Judge O'Brien's decision does not contain findings and conclusions necessary to establish "larceny" pursuant to 11 U.S.C. §523(a)(4).

Finally, Mr. Compton alleges that Ms. Moschell's conduct was "willful and malicious" within the meaning of 11 U.S.C. §523(a)(6). In some cases, but not all, conversion may constitute a willful and malicious injury. <u>Davis v. Aetna Acceptance Co.</u>, 293 U.S. 328, 332, 55 S.Ct. 151, 153, 79 L.Ed. 393 (1934). Recovery under this Section requires proof that the Debtor's actions were <u>both</u>

willful and malicious. Willful requires a showing of both an intentional act and intended harm. Malicious actions require a showing of intentional, wrongful and must be done without justification or excuse. <u>Bringhurst</u> at 823. Judge O'Brien found that Ms. Moschell acted without "lawful justification" but did not make any specific findings as to the level of Ms. Moschell's intent.  Again, a finding regarding her intent was not possible given the fact that she did not testify at the non-jury trial.

For the reasons set forth above regarding the lack of necessary findings and conclusions by Judge O'Brien, this Court concludes that Mr. Compton cannot rely on the collateral estoppel effect of Judge O'Brien's decision to prove his Section 523 claims.

Moreover, collateral estoppel does not apply where, as here, the issues presented in state court and in this Court are not identical. Congress has "reserved for bankruptcy courts *exclusive* jurisdiction to determine whether a particular debt is dischargeable in bankruptcy." <u>Grogan</u>, 498 U.S. at 284 n. 10 (emphasis in original).

Pennsylvania's collateral estoppel doctrine requires the showing of four elements:

1. An issue decided in a prior action is identical to one presented in a later action;

2. The prior action resulted in a final judgment on the merits;

3. The party against whom collateral estoppel is asserted was a party to the prior action, or is in privity with a party to the prior action; and;

4. The party against whom collateral estoppel is asserted has a full and fair opportunity to litigate the issue in the prior action.

Rue v. K-Mart Corp., 552 Pa. 13, 17, 713 A. 2d 82, 84 (1998).

The inquiry this Court must make is whether the intent requirements of a Pennsylvania common law conversion claim are identical to the scienter requirements of claims pursuant to Section 523 of the Bankruptcy Code. Collateral estoppel will not apply if there are differing burdens of proof applicable in the two proceedings. In re Mickletz at 815 *citing* In re Braen, 900 F.2d 621 (3d Cir. 1990). "[I]f the bankruptcy plaintiff prevailed in the prior proceeding on a claim requiring a less rigorous level of scienter than that required under the willful and malicious standard of §523(a)(6), issue preclusion is not available to the plaintiff." In re Kates, 485 B.R. 86, 103 (Bankr. E.D. Pa. 2012). The same reasoning can be applied to claims brought pursuant to Sections 523(a)(2)(A) and 523(a)(4) – each of which carries a higher level of scienter than Mr. Compton's conversion claim.

Pennsylvania's tort claim of conversion is the deprivation of another's right of property in, or use or possession of, a chattel, without the owner's consent and without lawful justification. Stevenson v. Economy Bank of Ambridge, 413 Pa. 442, 451,197 A.2d 721, 726 (1964); PTSI.

"Conversion can result only from an act intended to affect chattel." Shonberger v. Oswell, 530 A.2d 112, 114 (Pa.Super. 1987) *citing* Prosser & Keeton, *Torts*, § 15 (5th ed. 1984). "Specific intent is not required, however, but rather an intent to exercise dominion or control over the goods which is in fact inconsistent with the plaintiff's rights establishes the tort." Shonberger at 114 *citing* Stevenson, Commentary on the intent element of conversion claims suggests that, "An action for conversion does not rest on the defendant's knowledge or consciousness of the wrongdoing, nor the wrongful intent of the defendant. Indeed a defendant's intent is irrelevant in a tort for conversion. The act constituting 'conversion' must be an intentional act, but it does not require wrongful intent." 18 Am.Jur. 2d Conversion §3 (May 2020).

Contrast the scienter requirement of common law conversion with the intent requirements of Section 523 claims which exempt from discharge: debts for "actual "fraud - §523(a)(2)(A); debts for embezzlement or larceny - §523(a)(4) and debts for willful and malicious injuries - §523(a)(6).

Claims pursuant to §523(a)(2(A) require a showing of actual fraud which can only be met by showing deception or trickery, "or design involving direct and active operation of the mind used to circumvent and cheat another." Elliot et al v. Kiesewetter (In re Kiesewetter), 391 B.R. 740, 746-748 (Bankr. W.D. Pa. 2008).

Claims pursuant to §523(a)(4) which allege embezzlement or larceny require the showing of fraudulent conduct. Id. at 748. Moreover, larceny requires a showing of felonious conduct. Compton, 607 B.R. at 498.

Claims pursuant to §523(a(6) require a showing that the debtor caused the injury through willful and malicious conduct. Nondischargeability requires that the debtor intended "the consequences of the act" and not simply the "act itself." Kawaauhau v. Geiger, 523 U.S. 57, 61-62 (1998).

The intent requirements of a common law conversion claim and those necessary to establish nondischargeability under the Bankruptcy Code are clearly different which results in the collateral estoppel doctrine being inapplicable here. The scienter requirements for Section 523 claims are more rigorous than the showing necessary for common law conversion. The application of the collateral estoppel doctrine is not applicable to the trial Court's findings and conclusions that the Plaintiff proved conversion – a tort of general intent.

Moreover, Bankruptcy Courts may look behind pre-bankruptcy proceedings to evaluate and determine the dischargeability of a debt under Title 11. In re Mickletz, 544 B.R. at 813. Even where collateral estoppel does apply to pre-bankruptcy proceedings, the ultimate issue of whether the findings and conclusions of a state court constitute a nondischargeable debt is a legal question to be determined by applying federal bankruptcy law. In re Aiello, 533 B.R. 489 (Bankr. W.D. Pa. 2015) *citing* Hawkins v. Thomas, 478 B.R. 468 (Bankr. N.D. Ga. 2012).

For the reasons set forth here, this Court concludes that Mr. Compton cannot avail himself of issue preclusion in this matter. His claims will be reviewed applying federal bankruptcy law.

## **Plaintiff's Burden of Proof and Analysis of the Evidence**

Plaintiff's assertion that his Pennsylvania common law conversion claim constitutes an exception to discharge will be evaluated pursuant to 11 U.S.C. §§ 523(a)(2)(A), 523(a)(4) and 523(a)(6). In each instance his burden was to prove the elements of the exceptions by a preponderance of the evidence. In re Wilson, 114 B.R. 249, 252 (Bankr. E.D. Cal. 1990);  Geiger.


Section 523(a)(2)(A)

Section 523(a)(2)(A) of the Bankruptcy Code excepts from discharge "any debt . . . for money . . . to the extent obtained by  . . .  false pretenses, a false representation, or actual fraud . . . ." 11 U.S.C. §523(a)(2)(A). Mr. Compton asserts that his common law conversion claim constitutes "actual fraud" and, thus, is nondischargeable.

"Actual fraud" under Section 523(a)(2)(A) includes liability for wrongful conduct beyond misrepresentations and false pretenses. See Husky International Electronics, Inc. v. Ritz, 136 S.Ct. 1581, 1586, 194 L.Ed. 2d 655 (2016). To the Supreme Court, "fraud" connotes "deception or trickery" generally. Only if Mr. Compton's conversion claim involves deception or trickery, and is

done with wrongful intent or moral turpitude, can his claim fall within the coverage of "actual fraud" for purposes of 11 U.S.C. §523(a)(2)(A). <u>Id.</u> (citing <u>Neal v. Clark</u>, 95 U.S. 704,709, 24 L.Ed. 586 (1878) and 1 J. Story, <u>Commentaries on Equity Jurisprudence</u> §189, p. 221 (6th ed. 1853); <u>see also</u> <u>Sauer Inc., d/b/a Sauer Southwest v. Lawson (In re Lawson)</u>, 791 F.2d 214, 219 (1st Cir. 2015).

The phrase "actual fraud" in Section 523(a)(2)(A) encompasses debts that arise from "any deceit, artifice, trick, or design involving direct and active operation of the mind used to circumvent and cheat another." <u>Kiesewetter</u>), 391 B.R. at 746-748 (Bankr. W.D. Pa.  2008).  The question at this juncture is whether the Plaintiff has presented evidence which, by a preponderance, proves that the Debtor acted with "actual fraud" as defined and described by the case law. The Court concludes that he has not.

The factual basis upon which Mr. Compton rests his argument can be summarized as follows:

- Between May and July of 2016 Ms. Moschell changed her mailing address with SunTrust Bank to the Cape May address.
- The timing of the change of address was "questionable" or suspicious given its temporal relationship to the marketing of the Carmella Property.
- The two names appearing on the SunTrust Bank check required that it should have been executed by both Mr. Compton and Ms. Moschell.

In order to prove "actual fraud" Mr. Compton was required to present evidence of Ms. Moschell's intent. That evidence might have been that Ms.

Moschell was aware of Mr. Compton's intent to sell the Carmella Property before
SunTrust was provided with the Cape May address; that Ms. Moschell was aware
that SunTrust held funds in escrow and that after closing SunTrust would
disburse the escrow funds; that Ms. Moschell was aware SunTrust would
forward the escrow funds to the Cape May address; and, that the SunTrust check
would identify the payees in such a manner that would permit Ms. Moschell to
endorse and cash the check without Mr. Compton's endorsement.  The record
does not contain evidence of any of these facts. Instead, Ms. Moschell's credible
testimony contradicts Mr. Compton's mere suppositions. The record establishes:

- SunTrust obtained the Cape May address from Ms. Moschell as early
  as 2011-2012 when the Bank telephoned her regarding Mr. Compton's
  late and missing mortgage payments. This was well in advance of Mr.
  Compton's efforts to sell the Carmella Property in May of 2016.

- There is no evidence of record that Ms. Moschell was aware that
  SunTrust held escrow funds that would be disbursed after the Carmella
  Property sale closed.

- The credible testimony of Ms. Moschell is that she believed the
  SunTrust check belonged to her based on conversations with
  representatives of the Bank.

- The credible testimony of Ms. Moschell establishes that she made
  attempts to contact Mr. Compton regarding the SunTrust check prior
  to endorsing and cashing the check. She credibly testified, further, that

she cashed the check only after having received no response from Mr. Compton.

To summarize, there is no evidence of record that Ms. Moschell obtained the SunTrust check, endorsed and cashed the check with wrongful intent, with moral turpitude, or in an effort to deceive Mr. Compton.

In further support of this conclusion, and contrary to Mr. Compton's understanding of the law, Ms. Moschell properly endorsed and cashed the SunTrust check.

The check identified the payees as follows, "Cullen W Compton Meghan M Moschell." (ECF 46 - Exhibit 3.) The Pennsylvania Commercial Code (PCC), Article 3 – Negotiable Instruments – provides some guidance on the question of whether the Debtor properly endorsed and cashed the SunTrust check.

13 Pa.C.S.A. §3110 Identification of person to whom instrument is payable.

§3110(d): Instrument payable to two or more persons. – If an instrument is payable to two or more persons alternatively, it is payable to any of them and may be negotiated, discharged or enforced by any or all of them in possession of the instrument. If an instrument is payable to two or more persons not alternatively, it is payable to all of them and may be negotiated, discharged or enforced only by all of them. If an instrument payable to two or more persons is ambiguous as to whether it is payable to the persons alternatively, the instrument is payable to the persons alternatively.

(Emphasis added.)

The SunTrust check does not contain a conjunction to indicate whether the check is payable alternatively – thus it is ambiguous. In such a case the third sentence of §3110(d) is applicable making the check payable alternatively: to

either Mr. Compton or Ms. Moschell. The Comments to §3110(d) support this conclusion: "The third sentence of subsection (d) is directed to cases in which it is not clear whether an instrument is payable to multiple payees alternatively. In the case of ambiguity persons dealing with the instrument should be able to rely on the indorsement of a single payee."

Having failed to meet his burden to show the requisite scienter to show "actual fraud" (Husky, Kieseswetter) Mr. Compton's claim pursuant to 11 U.S.C. §523(a)(2)(A) is denied.

Section 523(a)(4)

Section 523(a)(4) of the Bankruptcy Code excepts from discharge any debt that is "for fraud or defalcation while acting in a fiduciary capacity, embezzlement or larceny." 11 U.S.C. §523(a)(4). Because the Debtor was not acting in a fiduciary capacity this Court will address, only, whether Ms. Moschell's actions in endorsing and cashing the SunTrust Bank check constitute embezzlement or larceny. See Compton, 607 B.R. at 497. ". . . general claims for embezzlement or larceny are excepted from discharge in bankruptcy without regard to whether or not the debtor was (or is) a fiduciary." See also Sibbet v. Presutti (In re Presutti), 540 B.R. 254, 170 (Bankr. W.D. Pa. 2015) ("fiduciary relationship is not required for claims alleging embezzlement or larceny.")

The question left to the Court with regard to Mr. Compton's Section 523(a)(4) claim is whether he met his burden of proving either embezzlement or

larceny. Reviewing the evidence the Court concludes that the Plaintiff proved neither.

Both embezzlement and larceny under Section 523(a)(4) require a showing of fraudulent conduct. To prove embezzlement, Mr. Compton was required to show a "fraudulent appropriation of property by a person when such property has been entrusted, or into whose hands it has lawfully come." <u>Kiesewetter</u>, 391 B.R. at 748 *citing* <u>In re Ishmael</u>, Adv. No. 07-287, 2008 WL 80040 (Bankr. E.D. Pa. Jan. 7, 2008). To prove larceny, Mr. Compton was required to show a "felonious taking of another's personal property with intent to convert it or deprive the owner of same." <u>DirectTV v. Deerey (In re Deery</u>, 371 B.R. 525 (Bankr. M.D. Fla. 2007); <u>In re Schlessinger</u>, 208 Fed. Appx. 131, 133 (3d Cir. 2006). This Court has noted that the definition of "felonious" is "proceeding from an evil heart or purpose; malicious; villainous . . . Wrongful; (of an act) done without excuse or color of right." <u>Compton</u>, 607 B.R. at 498 *quoting,* <u>Black's Law Dictionary</u> (8th ed. 2004).

Regardless of whether Ms. Moschell's conduct in endorsing and cashing the SunTrust Bank check constitutes embezzlement (lawfully taking possession of the check) or larceny (unlawfully taking possession of the check) it was necessary that Mr. Compton prove the required scienter in order to prevail on his claim. The evidence does not support Mr. Compton's theory of recovery.

Plaintiff's factual theory of recovery is based on his supposition that Ms. Moschell engaged in deception and trickery when she caused SunTrust Bank to

change her mailing address to the Cape May address shortly before the Carmella Property was sold. The change in address, according to Mr. Compton, was intended to result in the Debtor's receipt of the escrow check following the closing with the intent to deprive him of property rights in the escrow funds.

Ms. Moschell credibly testified to the contrary. The mailing address was changed, not at Ms. Moschell's direction or request. The address was changed based on SunTrust's inquiry as to the Debtor's then current mailing address. The inquiries were made based on Mr. Compton's failure to make timely mortgage payments on the Carmella Property. Moreover, Mr. Compton's suggestion that the timing of the address change proves his theory that Ms. Moschell intended to deprive him of the escrow funds is not supported by the evidence. The address change occurred four years prior to the marketing and sale of the Carmella Property. The evidence, in no way, supports that the change in address was conceived or instituted by the Debtor with an evil heart in an effort to deprive him of the escrow funds. No trickery was shown. No deception was shown. Without a showing of the intent necessary to establish embezzlement or larceny Mr. Compton cannot prevail on his Section 523(a)(4) claim.

Section 523(a)(6)

Section 523(2)(6) of the Bankruptcy Code excepts from discharge debts for "willful and malicious injury to another entity or to the property of another entity[.]" 11. U.S.C. §523(a)(6). The analysis of the applicability of this Section of

the Code is not resolved by the Mr. Compton's argument that a Pennsylvania common law claim for conversion is exempt from discharge.

"[N]ot every tort judgment for conversion is exempt from discharge [under 11 U.S.C. §523(a)(6)]." Geiger, 523 U.S. at 61. A proper analysis requires consideration of whether the debtor caused the injury through willful and malicious conduct. Pursuant to "Geiger, the willful injury requirement . . . is met when it is shown either that the debtor had the subjective motive to inflict the injury or that the debtor believed that injury was substantially certain to occur as a result of his conduct." Petralia v. Jercich (In re Jercich), 238 F.3d 1202, 1208 (9th Cir. 2001). As the Third Circuit Court of Appeals stated in a pre-Geiger opinion, an injury is willful under the Bankruptcy Code only if the actor purposefully inflicted the injury or acted with substantial certainty the injury would result. Conte v. Gautam (In re Conte), 33 F.3d 303, 307 (3d Cir. 1994): see also Lavrich v. Scott (In re Scott), 294 B.R. 620 (Bankr. W.D. Pa. 2003). As to a showing of malice, the act resulting in injury must be "wrongful and without just cause or excuse, even in the absence of personal hatred, spite or ill will." See Wymard v. Ali (In re Ali), 321 B.R. 685, 693 (Bankr. W.D. Pa. 2005) (citing Collier on Bankruptcy   ¶523.12[1] at 523-91); see also Enterprise Bank v. Hannan (In re Hannan), 477 B.R. 603, 612 (Bankr. W.D. Pa. 2012); Wann v. Sosso (In re Sosso), 516 B.R. 303, 314 (Bankr. W.D. Pa. 2014).

Plaintiff had the burden of showing more than his theory that the Debtor committed common law conversion and thus he is entitled to an exception. "[T]he

tort of conversion has been held to be a general intent offense, meaning that only the act, not necessarily the injury, be intentional." Kimco Leasing Co. v. Wilson (In re Wilson), 383 B.R. 678, 681 (Bank. N.D. Ohio 2007). Where conversion merely rests upon the intentional act, rather than the willful and malicious injury, relief under 11 U.S.C. §523(a)(6) will not lie. Id. "A claim founded upon a mere technical conversion, without conscious intent to violate the rights of another, and under mistake or apprehension, is dischargeable." Wilmington Trust Co. v. Behr (In re Behr), 42 B.R. 922, 925 (Bankr. E.D. 1984) (citing Davis and 1A Collier on Bankruptcy, §17.09 (14th ed.)).

Plaintiff rests his claim on the simple facts that SunTrust mailed the escrow check to Ms. Moschell at the Cape May address, he believed at her direction, and that she endorsed and cashed the check. More was required of the evidence to prove his entitlement to recovery under Section 523(a)(6). He needed to present evidence of the Debtor's subjective intent to inflict the injury or that the injury was substantially certain to occur. No evidence on either of these standards was introduced to prove a willful injury.  Further, no evidence was introduced to show that Ms. Moschell's actions were without legal justification and were purposefully directed to take away property allegedly belonging solely to the Plaintiff. Without showing the necessary intent required by Section 523(a)(6), Mr. Compton's claim must fail.

## **Conclusion**

Having failed to present evidence as to a necessary element of each of his claims – the intent of the Debtor – the Plaintiff's claims fail.   Mr. Compton's conversion claim against the Debtor is not excepted from discharge. An appropriate order follow.

October 9, 2020                              _____
                                                  The Honorable Jeffery A. Deller
                                                  United States Bankruptcy Judge

Case Administrator to serve:
Cullen W. Compton, *pro se*
Kathryn L. Harrison, Esquire
Office of the United States Trustee